IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HARRY G. SCHMIDT, JR.

     Plaintiff,

    v.

NANCY BOWENS and CHRISTINE FOWLER,

    Defendants.

OPINION and ORDER

Case No. 16-cv-30-slc

Pro se plaintiff Harry Schmidt, who is incarcerated at Oshkosh Correctional Institution ("OCI"), is proceeding on an Eighth Amendment claim that defendants Nancy Bowens and Christine Fowler were deliberately indifferent to his serious medical needs. Specifically, Schmidt alleges that Bowens denied him access to a continuous positive airway pressure (CPAP) machine for his breathing problems and that Bowens and Fowler failed to provide him with adequate treatment for his back pain. Before the court is defendants' motion for summary judgment. Dkt. 81. I am granting the motion and entering summary judgment in favor of defendants because Schmidt has failed to produce evidence from which a reasonable jury could conclude that either Bowens or Fowler was deliberately indifferent to Schmidt's breathing problems or back problems.

I find that the following facts are material and not subject to genuine dispute, unless otherwise indicated:

UNDISPUTED FACTS

Harry Schmidt is an inmate at Oshkosh Correctional Institution. When Schmidt was transferred to OCI from another institution in January 2015, he was 24 years old and had

1

been diagnosed with several psychiatric disorders, chronic headaches and gastroesophageal reflux disease (GERD). Schmidt did not have sleep apnea or chronic back pain at that time.

Defendant Nancy Bowens has been employed by the Wisconsin Department of Corrections as a Licensed Nurse Practitioner in OCI's Health Services Unit since 2001. She has been Schmidt's primary healthcare provider since January 2015.

Defendant Christine Fowler was employed at OCI as a "Limited Term Employee Nurse Clinician 2 - Weekend" from October 7, 2013 to August 8, 2015.

On April 30, 2015, Schmidt was evaluated by nursing staff at OCI. His main complaint was GERD, but Schmidt also complained of difficulties sleeping and reported that he needed a fan blowing on him and needed a "bed wedge" to help him sleep. (A bed wedge is a device that helps with snoring and GERD symptoms.) Schmidt was referred to an advanced care provider and was told that an appointment would be scheduled in two weeks.

On May 19, 2015, Schmidt submitted a health service request, stating that he had back pain from falling out of bed twice the night before. He was seen and evaluated by Nurse Fowler, who noted that Schmidt had no apparent abnormalities, was alert and oriented, was not visibly injured, had a strong and steady gait, had full range of motion and was able to bend over with his fingers six inches from the ground. Fowler treated Schmidt's back pain with a muscle rub and acetaminophen. Although Schmidt asked for an x-ray and to see a doctor, Fowler did not believe that any additional treatment was necessary and did not refer Schmidt to an advanced care provider. Fowler advised Schmidt to submit a health services request if his symptoms did not improve, but she is not aware of Schmidt submitting any such request. Bowens was not involved in this initial treatment of Schmidt's back pain.

On June 6, 2015, Schmidt submitted a health services request asking when he was going to be seen about a bed wedge and a CPAP machine. Sleep apnea is a potentially serious sleep disorder involving the repeated stopping and starting of an individual's breathing, and a common treatment for sleep apnea is CPAP therapy, by which a ventilation device—a CPAP machine—is used to keep the individual's airway continuously open through the application of air pressure.

On June 24, 2015, Bowens saw Schmidt and ordered a bed wedge for him. Bowens also adjusted Schmidt's headache medication and told Schmidt to let health services staff know whether these interventions relieved his symptoms. The clinical note for this appointment does not state that Schmidt talked about a CPAP machine. Schmidt did not follow-up with health services staff about the effectiveness of the bed wedge.

Bowens next saw Schmidt on July 15, 2015 for headaches. At this appointment Schmidt expressed his interest in a CPAP machine and reported that he had undergone a sleep study at Mercy Medical Center in 2011. Bowens wrote an order for staff to obtain the study results. On July 23, 2015, Bowens directed staff to notify Schmidt that his 2011 sleep apnea results were "normal," meaning that they were negative for sleep apnea. Bowens believes that the "Problem List" in Schmidt's medical chart was updated around this time to indicate that he had undergone a sleep study in 2011 that was negative for sleep apnea. Although the study results state that plaintiff had difficulty falling and staying asleep during the testing, they also make clear that "[t]he patient does not have sleep apnea." Dkt. 84, exh. 1 at 12. There are no notations in Schmidt's medical chart showing that he complained

to Bowens about waking up gasping for breath or being short of breath—the symptoms that prompted the sleep study in 2011—or about any other symptoms of sleep apnea.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel*, 612 F.3d at 937 (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

### II. Eighth Amendment Deliberate Indifference

Schmidt's claims of inadequate medical care arise under the Eighth Amendment, which imposes a duty on prison officials to take reasonable measures to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To succeed on

his claim, Schmidt must submit sufficient evidence to show that his back pain and his sleeping disorder were "serious medical needs," and that Bowens and Fowler were "deliberately indifferent" to those serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A "serious medical need" is a condition that a doctor has recognized as needing treatment, or a condition so obvious that even a lay person would recognize the need for medical treatment. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if (1) it is life-threatening, carries risks of permanent serious impairment if left untreated or results in needless pain and suffering, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997); or (2) it "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); or (3) it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer*, 511 U.S. at 847.

"Deliberate indifference" means that the prison health care provider was aware that the prisoner actually needed medical care but chose not to provide reasonable treatment, *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997), or provided treatment that was "blatantly inappropriate," *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). I will address defendants' actions with respect to each of his medical conditions separately.

### A. Back Pain

The undisputed facts show that Schmidt saw Nurse Fowler in the Health Services Unit on May 19, 2015, complaining that he had fallen out of his bed twice the night before and had woken up on the floor. Fowler evaluated Schmidt and found that he did not have any apparent abnormalities with his musculoskeletal system, he was not visibly injured, he had a strong, steady gait, full range of motion, and he was able to bend over with his fingers six inches from the ground. Based on her evaluation and Schmidt's complaints of back pain, Fowler prescribed muscle rub and acetaminophen, and told Schmidt to submit a Health Service Request slip if his symptoms did not improve. Fowler states that she did not believe that any additional treatment was necessary.

Schmidt has not offered any contradictory evidence from which a jury could infer that he was seriously injured, had a condition requiring more extensive treatment than muscle rub and pain medicine, or that Fowler was aware that he faced a substantial risk of harm but disregarded that risk. Rather, the undisputed facts show that Nurse Fowler promptly evaluated Schmidt, provided appropriate treatment, and told him to follow-up if necessary, which he did not do.

The only thing that Schmidt says in response to defendants' arguments is that he asked Fowler if he could get x-rays or see the doctor, and Fowler told him no. Nurse Fowler has explained the reasons for the actions she took–and that she chose not to take–and Schmidt's response does not call into question the legitimacy or appropriateness of her explanation or underlying actions. A prisoner's "disagreement with medical professionals about his needs" is insufficient to find an Eighth Amendment violation. *Ciarpaglini v. Saini*,

352 F.3d 328, 331 (7th Cir. 2003). *See also Blankenship v. Birch*, 590 Fed. Appx. 629, 633 (7th Cir. 2014) (disagreement over reasonable recovery regimen insufficient to establish Eighth Amendment violation); *Forbes*, 112 F.3d at 266 (Eighth Amendment does not guarantee specific medical treatment).

Schmidt also fails to present any evidence from which a reasonable jury could conclude that Bowens acted with deliberate indifference to his back pain. In his response to defendants' motion for summary judgment, Schmidt states that Bowens (1) took away his muscle rub because he did not refill his prescription for it in a timely manner; and (2) failed to respond to his request for a second mattress. Schmidt did not make any allegations in his complaint concerning Bowens failure to address his back pain, and he has not adduced any evidence proving that Bowens was aware of his back pain or that the alleged denial of the muscle rub and second mattress caused him serious pain or discomfort. The clinical notes for Schmidt's appointments on June 24 and July 15, 2015 do not contain any mention of Schmidt having back pain. Further, Schmidt's complaints that Bowens failed to offer him the specific treatment that he requested are not sufficient to prove an Eighth Amendment violation. Without more, Schmidt cannot show that Nurse Bowens acted with deliberate indifference to any serious medical need related to his back.

Accordingly, defendants' motion for summary judgment with respect to Schmidt's claim that Fowler and Bowens acted with deliberate indifference to his back pain will be granted.

**B. CPAP Machine**

The undisputed facts show that when Schmidt requested a CPAP machine, Nurse Bowens followed up by obtaining the results of Schmidt's 2011 sleep study, which stated that Schmidt did not have sleep apnea. Schmidt appears to dispute the validity of the study on the ground that he did not sleep long enough during the test to obtain an accurate result, but his argument is pure speculation. Schmidt says that he told Bowens that he had talked to "some people" who said that 8½ to 10½ hours of sleep are required in a sleep study to "get the right reading" but that he only slept 2½ hours during his sleep study.

These vague allegations based on an unknown source are insufficient to put either the sleep study results or Bowens's reliance on them in question. A sleep disorder specialist conducted diagnostic testing, noted Schmidt's trouble sleeping during the testing, and then unambiguously ruled out sleep apnea. Bowens had no other basis from which to conclude that Schmidt had sleep apnea. Schmidt has presented no evidence to refute these facts. Schmidt does not say that he told Bowens that he had any continuing symptoms that were consistent with sleep apnea. Accordingly, Bowens is entitled to summary judgment on Schmidt's claim that she acted with deliberate indifference to his need for a CPAP machine.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Nancy Bowens and Christine Fowler, dkt. #81, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 2nd day of February, 2018.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge